UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————X
FREDERICO GIOVANNELLI,                  :
                                        :
                    Petitioner,         :  07 Civ. 3069(JSR)(THK)
                                        :
        -against-                       :
                                        :    **REPORT AND**
                                        :    **RECOMMENDATION**
UNITED STATES OF AMERICA,                :
                                        :
                    Respondent.         :
————————————————————————————X
**FROM:  THEODORE H. KATZ, United States Magistrate Judge.**
**TO:    HON. JED S. RAKOFF, United States District Judge.**

In 2004, Frederico Giovanelli ("Petitioner") was tried before a jury in the Southern District of New York (Honorable Jed S. Rakoff, United States District Judge presiding) on eighteen separate counts. On May 14, 2004, after an eighteen-day trial, the jury acquitted Petitioner on fifteen of the counts, but returned a verdict of guilty on one count of conspiracy under 18 U.S.C. § 371, the object of which was to obstruct justice in violation of 18 U.S.C. § 1503, and two counts of "endeavoring" to obstruct justice in violation of § 1503. The court sentenced Petitioner to a term of 121 months of incarceration.

On appeal, Petitioner made four arguments, including the underlying argument that forms the basis of this action – that the jury charge on the obstruction of justice counts was defective. The Second Circuit rejected this argument, holding that Petitioner waived his right to challenge the jury charge. See United States v. Giovanelli, 464 F.3d 346, 351 (2d Cir. 2006). Indeed, the

Second Circuit held that Petitioner approved and invited the change to the jury charge about which he was complaining.  Id.  In the instant action, the new wrinkle is that Petitioner now claims that his counsel was ineffective for failing to object to the final jury charge that was delivered to the jury.

This action was referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72.1(d) of the Southern District of New York Local Civil Rules.  For the reasons that follow, the Court finds that Petitioner's ineffective assistance of counsel claim is meritless, and, accordingly, recommends that the Petition be denied and the case be dismissed in its entirety.

## BACKGROUND[1]

Trial, Verdict And Sentence

On October 15, 2003, Petitioner was indicted and charged with eighteen counts, including conspiracy under 18 U.S.C. § 371 (Count Three) and two separate counts of endeavoring to obstruct justice under 18 U.S.C. § 1503 (Counts Four and Five, respectively). (See Memorandum Of Law Of The United States Of America In Opposition to Defendant Federico Giovanelli's Motion Under 28 U.S.C. § 2255 To

---

[1] Perhaps because Petitioner assumed that his Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence ("Petition") would be heard by the trial judge, the Petition contains very little in the way of background facts.  This Report and Recommendation will, therefore, rely on the Second Circuit decision, see Giovanelli, 464 F.3d at 348-50, and Respondent's submission, to set forth the background facts.

2

Vacate, Set Aside, Or Correct Sentence ("Resp't Mem."), at 2.)[2]
These charges stemmed from allegations that Giovanelli, an alleged
Captain of the Genovese Organized Crime Family of La Cosa Nostra,
provided sensitive information that he had obtained from a grand
jury investigation, to the targets of that investigation, including
Vincent Palermo, the then-acting Boss of the Decalvacante Family.
(See Resp't Mem., at 3-5); Giovanelli, 464 F.3d at 350.  On May 14,
2004, after an eighteen-day trial, the jury acquitted Petitioner on
fifteen of the eighteen counts but returned a guilty verdict on
Counts Three, Four, and Five.  Giovanelli, 464 F.3d at 349.

Post-Trial Filings, Appeal And Related Filings

Petitioner filed a Notice of Appeal in October, 2004, and,
following the United States Supreme Court's decision regarding the
United States Sentencing Guidelines in United States v. Booker, 534
U.S. 220, 125 S. Ct 738 (2005), filed a motion to remand to the
District Court for re-sentencing.  On remand, in light of the
decisions in Booker and United States v. Crosby, 397 F.3d 103 (2d
Cir. 1005), the District Court reduced Petitioner's sentence from
121 months to 90 months.

Subsequent to the sentence adjustment on remand, Petitioner
proceeded with his appeal in the Second Circuit, challenging his

---

[2] Respondent states that Petitioner was charged with sixteen
counts, as opposed to eighteen.  The Second Circuit decision, as
well as the docket sheet in the criminal action, indicate that
Petitioner was charged with eighteen counts. See Giovanelli, 464
F.3d at 349.

conviction and sentence on four grounds: "(1) that the obstruction of justice charges were not supported by the evidence; (2) that the jury charge was defective; (3) that the government failed to 'specify charges' and thereby violated [Petitioner's] due process rights (or, as the government frames the challenge, that the government 'constructively amended' or 'improperly varied' the charges); and (4) that the district court incorrectly calculated the Guidelines range applicable to [Petitioner's] conviction, and that [Petitioner's] 90-month prison sentence [was] otherwise unreasonable." Giovanelli, 464 F.3d at 349.   The government argued that Petitioner had waived his second claim – the jury charge claim – and, in all events, any claim that the jury charge was "plain error" was "completely unpersuasive."  See Appellate Brief for the United States of America ("App. Br."), 2006 WL 4802070 at *54 (Mar. 9, 2006).

The Second Circuit rejected all of Petitioner's arguments, finding, among other things, that Petitioner had waived his argument that the jury charge was defective.  The Second Circuit, therefore, affirmed Petitioner's conviction and sentence. Giovanelli, 464 F.3d at 355.  Petitioner then filed a Petition for Rehearing or En Banc Review ("Petition for Rehearing"), see 2006 WL 4794101, on the grounds that the Second Circuit panel had failed to conduct a "plain error" analysis. (Petition, at (5).)  On March 28, 2007, without discussion, the Second Circuit denied the

4

Petition for Rehearing.  On June 25, 2007, Petitioner filed, in the United States Supreme Court, a Petition for a Writ of Certiorari, see 2007 WL 1888915, which was denied on October 1, 2007. See 2007 WL 1998914.

The Instant Petition

On April 16, 2007, Petitioner filed the instant action.  Only one of the arguments that Petitioner raised on his direct appeal is at issue here – that the District Court's jury charge on the obstruction counts was defective.  Because the jury charge claim itself was rejected by the Second Circuit, Petitioner now modifies his argument by claiming that Petitioner's trial counsel, Vivian Shevitz ("Shevitz"), provided ineffective assistance by failing to object to the charge before it was submitted to the jury.[3]  In order to fully understand this argument, a brief return to the trial court proceedings is necessary.

The Jury Charge

Petitioner was convicted, on Counts Four and Five of the Indictment, pursuant to the "omnibus clause" of 18 U.S.C. § 1503, which provides as follows:

> Whoever . . . corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or *endeavors* to influence, obstruct,

---

[3] Ms. Shevitz also represented Petitioner on appeal and she is representing Petitioner in this action.  She is therefore in the unusual position of arguing that she herself provided ineffective assistance at Petitioner's trial.

> or impede, the due administration of justice,
> shall be fined not more than $5,000 or
> imprisoned not more than five years, or both.

(Emphasis added.)  On April 12, 2004, the government provided the
District Court with its requested jury instructions for the § 1503
counts, which stated:

> It is sufficient to satisfy [the endeavor]
> element if you find that the defendant acted
> in a way which obstructed or had the natural
> and probable effect of obstructing justice
> from being duly administered, as defined
> above.

(See Revised Request to Charge By USA As To Alex Conigliaro and
Federico Giovanelli, dated April 12, 2004 ("Requested
Instruction"), at 36.)  Thereafter, Petitioner's counsel submitted
a blacklined copy of the government's requested charge, with the
additions, deletions and changes she was requesting.  Defense
counsel did not disturb the "natural and probable effect" language,
but she requested an additional instruction regarding "specific
intent" to obstruct, which stated as follows:

> The Fourth Element is that the defendant acted
> with the specific intent to obstruct the grand
> jury proceeding.  The 'possibility' that an
> obstruction may occur does not establish the
> defendant's intent to obstruct.  You must
> examine the defendant's intent, and must
> acquit if you find that he did not act with a
> specific intent to obstruct the grand jury
> proceeding.

(See App. Br., 2006 WL 4802070 at *42-43.)[4]  Defense counsel

_____

        [4] It does not appear that Petitioner filed his blacklined
copy of the Government's proposed charges, instead simply

apparently never mentioned this request again, and did not thereafter ask the court for a specific charge indicating that it was insufficient to convict on this charge merely if there was a possibility that an obstruction of justice could occur.

On May 10, 2004, the court provided the parties with copies of its draft jury charge, which included language that had been requested by both parties, and which was contained in <u>United States v. Aguilar</u>, 515 U.S. 593, 599, 115 S. Ct. 2537 (1995). That language states that to convict under an endeavoring to obstruct justice theory, the prosecution must show that the endeavor had "the natural and probable effect of interfering with the due administration of justice." <u>Id.</u> at 599 (internal citations omitted). That same day, defense counsel objected to the "natural and probable effect" language by stating "I will object generally to the 'natural and probable effect' on a <u>Sandstrom</u> type basis." (Tr. at 2565.)[5] Defense counsel, therefore, requested an addition to the charge which required a finding that Petitioner acted "for the purposes of and with a specific intent of or to interfere." (Tr. at 2567.)

_____

submitting it to the District Court for review. The Government's brief on appeal, however, quotes from Petitioner's blacklined copy, and, for that reason, it is cited here.

[5] <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450 (1979), held that an instruction which advised the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts" impermissibly shifted the burden of disproving intent to the defendants. <u>Id.</u> at 2458.

Although the court initially responded to that objection by stating that Sandstrom "goes to intent and this is not a question of intent [but] effects," (Tr. at 2565), the charge settled on by the following morning did not contain the natural and probable effect language. The charge the court proposed, and which was ultimately submitted to the jury, stated in relevant part:

> Turning then to the essential elements of the particular charges – elements that, unlike venue, must be proven beyond a reasonable doubt in order to convict – we begin with the two charges of obstruction of justice, which are numbered Counts 4 and 5 and which charge Mr. Giovanelli with obstructing justice himself or with aiding and abetting someone else to do so. In order to convict Mr. Giovanelli of obstructing justice himself, the Government must prove beyond a reasonable doubt each of the three elements: first, that in and around October and November 1999, a federal grand jury in the Southern District of New York was conducting an investigation into organized crime; second, that Mr. Giovanelli knew, directly or circumstantially, that the grand jury was conducting such an inquiry and was preparing to issue charges; and third, that Mr. Giovanelli knowingly and corruptly endeavored to obstruct or impede the grand jury proceedings by actions he took at an alleged meeting with Anthony Rotondo in or about October 1999 (Count 4) and/or at an alleged meeting with Vincent Palermo on or about November 1999 (Count 5).
>
> In this connection, "corruptly endeavored" means to undertake some activity with the specific motive or purpose of obstructing or impeding the grand jury's proceedings in some respect. Such a purpose includes any intent to interfere with any aspect of the grand jury's work and the proceedings related thereto, even if the endeavor is unsuccessful. Specifically, the government here alleges that

> . . . defendant Giovanelli, for the purpose of interfering with the grand jury's investigation and related proceedings, passed on to potential targets of the grand jury's investigation information that he knew had been unlawfully obtained regarding the targets and subject matter of that investigation, knowing that such disclosure might help the targets to hide assets, avoid arrest, tamper with witnesses, or otherwise interfere with the grand jury's proceedings.
>
> If as to any given count the Government proves each of the foregoing elements beyond a reasonable doubt, then you must convict Mr. Giovanelli on that count.

(The Court's Instructions Of Law To The Jury ("Final Instruction"), at 16.)  Thus, the court accepted defense counsel's argument that the "natural and probable effect" language was improper, and it agreed to omit it from the charge, but it did not explicitly embrace defense counsel's earlier argument that the possibility of obstruction was insufficient.  The court held that "a reasonable juror could find that someone in the position of [Petitioner] knew that in providing this material he would be providing the opportunities to do all of the things the government is claiming, then, were attempted.  You may argue that the proof does not support that.  I think there is enough to go to the jury on that issue."  (Tr. at 2600; <u>see also</u> Pet.'s Reply, at 5.)

When the court advised Petitioner's counsel that it "accepted [her] argument that 'natural and probable' was not correct and so it isn't there," Petitioner's counsel responded, "That is good but . . . that is not what I am objecting to.  I am happy about that

9

one." (Tr. at 2598.) Petitioner's counsel then raised an entirely different objection, arguing that the specific acts set forth in the new charge, e.g., hiding assets, avoiding arrest, etc., were improper because those specific acts were not set forth in the indictment. The court overruled that objection. (Tr. at 2598-2600.)

The charge was then submitted to the jury and Petitioner was convicted on the obstruction of justice counts.

## DISCUSSION

I.    Ineffective Assistance of Counsel

Petitioner's ineffective assistance of counsel claim is based on his counsel's failure to object to the "might" language that was added to the charge after the court agreed that the "natural and probable" language should be omitted. (See Pet.'s Reply, at 2.) According to Petitioner, "since anyone 'might' or 'might not' do something, the actual charge given by the court, with its improper 'might do' language that [his counsel] unfortunately overlooked at the time, the case was made too easy." (Id. at 7.) Petitioner argues that his counsel's failure to object to this language constituted ineffective assistance of counsel which was non-strategic, and led to severe prejudice. (Pet. at 3-4.)

Respondent takes a different view, arguing that the jury charge, as submitted, "made the Government's case against Giovanelli more difficult than it would have been if the jury

10

merely had to find that the 'endeavor had the natural and probable effect of interfering with the due administration of justice' and it clearly did not permit conviction without actual intent." (Resp't Mem., at 9.)  In this regard, Respondent points out that the Second Circuit expressly held that Giovanelli conceded that the jury charge "did require the jury to find that Giovanelli had 'the specific motive or purpose of obstructing or impeding the grand jury's proceedings' in order to convict."  (Id. (quoting Giovanelli, 464 F.3d at 351.))

    A.   Applicable Law

        1.  Generally

To establish a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that his counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984); accord Lanfranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001).  The performance of counsel is deficient if it "[falls] below an objective standard of reasonableness" under "prevailing professional norms." Strickland, 466 U.S. at 688, 104 S. Ct. at 2064-65; accord Lanfranco, 313 F.3d at 118.

In applying the first prong of the Strickland test, quality of representation, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065 (citation and internal quotation marks omitted); see also United States v. Best, 219 F.3d 192, 201 (2d Cir. 2001) ("Actions or omissions [by counsel] that might be considered sound trial strategy do not constitute ineffective assistance.") (internal quotation marks and citations omitted). A strategic decision is a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir. 2004); accord Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001). A court must "make every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005)(quoting Strickland, 466 U.S. at 689, 104 S. Ct. at 2052); see also Cox, 387 F.3d at 198; United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Yarborough v. Gentry, 540 U.S. 1, 8, 124 S. Ct. 1, 6 (2003) (per curiam).

To satisfy the second prong of the Strickland test, a petitioner must show that his counsel's errors were so serious as to deprive him of a fair trial," and that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2068; <u>see also</u> <u>Aparicio</u>, 269 F.3d at 95; <u>Flores v. Demskie</u>, 215 F.3d 293, 300 (2d Cir. 2000). "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome" of the proceeding. <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2052; <u>see also</u> <u>Aparicio</u>, 269 F.3d at 95.

A petitioner has the burden of overcoming the presumption that his counsel's representation was reasonable. <u>See</u> <u>Strickland</u>, 466 U.S. at 690, 104 S. Ct. at 2066 ("Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."); <u>see also</u> <u>Aparicio</u>, 269 F.3d at 95.

### 2. Jury Instructions

In connection with an ineffective assistance claim for failure to object to a jury charge, a court must determine whether defense counsel's failure to object was "objectively unreasonable" and, if so, whether the outcome of the petitioner's trial would likely have been different had counsel made such an objection. <u>See</u> <u>Cox v. Donnelly</u>, 387 F.3d 193, 198 (2d Cir. 2004); <u>Larrea v. Bennett</u>, 368 F.3d 179, 183 (2d Cir. 2004). Generally, it is objectively unreasonable for counsel to fail to object to a jury instruction "only when the trial court's instruction contain[s] clear and

previously identified errors." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 99
(2d Cir. 2001); <u>see also</u> <u>Larrea v. Bennett</u>, No. 01 Civ, 5813, 2002
WL 1808211, at *3 (S.D.N.Y. Aug. 2, 2002), <u>aff'd</u> 368 F.3d 179 (2d
Cir. 2004).    "Conversely, when a trial court's instruction is
legally correct as given, the failure to request an additional
instruction does not constitute deficient performance." <u>Aparicio</u>,
269 F.3d at 99; <u>see also</u> <u>United States v. Arena</u>, 180 F.3d 380, 396
(2d Cir. 1999)("Failure to make a meritless argument does not
amount to ineffective assistance"); <u>Duncan v. Greiner</u>, No. 97 Civ.
8754 (JGK), 1999 WL 20890, at *10 (S.D.N.Y. Jan. 19, 1999) (since
trial counsel's objection would have been fruitless, "the failure
to object is not evidence of ineffective assistance of counsel").
In assessing whether a jury instruction was clearly erroneous, it
is a well established proposition that one "must consider the
challenged portion not 'in artificial isolation,' but rather 'in
context of the overall charge.'" <u>Justice v. Hoke</u>, 45 F.3d 33, 34
(2d Cir. 1995) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 146-47, 94
S. Ct. 396, 400 (1973).)

    B.    <u>Application</u>

    Here, in order to satisfy the <u>Strickland</u> standard, Petitioner
must show that (1) his counsel's failure to object to the revised
instruction to the jury fell below an objective standard of
reasonableness, and (2) there is a reasonable probability that, had
his counsel objected to the instruction, the charge would have been

altered and the jury would have acquitted Petitioner of the obstruction counts, or, if the charge had not been altered, that the Second Circuit would have found the instruction to contain non-harmless error and vacated the conviction.

    1.   <u>The Failure To Object Was Not Unreasonable</u>

As set forth in detail above, Petitioner's counsel effectively persuaded the District Court to remove from the instruction the "natural and probable" language regarding Petitioner's intent to obstruct justice. Indeed, based on the objections of Petitioner's counsel, the court changed the language regarding intent from:

> (a) "defendant acted in a way which obstructed or had the natural and probable effect of obstructing justice"

> to

> (b) "[defendant] undert[ook] some activity with the specific motive or purpose of obstructing or impeding the grand jury's proceedings in some respect."

(<u>Compare</u> Requested Instruction, at 36, <u>with</u> Final Instruction, at 16.) Thus, the modified instruction was clearly more favorable to Petitioner because it required specific intent to obstruct justice.[6]

Petitioner, however, now complains about the portion of the

---

    [6] As set forth below, notwithstanding Petitioner's argument and the District Court's change to the instruction, it is entirely unclear whether the initial instruction, which included the "natural and probable effect" language would have been considered legally incorrect.

instruction that the court added to the instruction, in which it merely recited the government's allegations regarding Petitioner's obstruction of justice. <u>See</u> Final Instruction, at 16 ("the government here alleges that . . . defendant Giovanelli . . . passed on to potential targets of the grand jury's investigation information . . . knowing that such disclosure *might* help the targets to hide assets, avoid arrest, tamper with witnesses, or otherwise interfere with the grand jury's proceedings.") (Emphasis added.) Specifically, Petitioner argues that the word "might" impermissibly lowered the bar for the government's burden of proof.

As an initial matter, Petitioner's assertion that "the 'might' language [was] substituted for the 'natural and probable' language immediately before the charge was given" is simply inaccurate. (<u>See</u> Pet. Reply, at 6.)  The intent portion of the instruction, which relates to Petitioner's mindset, was, in fact, strengthened, by eliminating the natural and probable language, and by adding the specific intent language based on Petitioner's counsel's objections.  Thus, Respondent's argument that Petitioner's counsel was effective – as opposed to ineffective – is not without basis. Moreover, the "might" language appeared in a portion of the instruction in which the District Court was merely reciting the allegations of the government; it did not arise in the context of the District Court's explanation of the elements of endeavoring to obstruct justice.  As discussed <u>infra</u>, Petitioner's counsel's

16

failure to object to this word was ultimately of little consequence.

It is also worth noting that Petitioner's trial lasted eighteen days. During that time, Petitioner's counsel filed numerous motions, effectively cross-examined witnesses, objected to the instructions to the jury, argued effectively for changes to some of those instructions, and was repeatedly complimented on her performance by the District Court. (See Tr. at 2873 ("I want to express my personal appreciation to all counsel to what I thought was a very well-tried case and very professional. Very well done."); see also Transcript dated September 15, 2004, at 41 ("Defense counsel, and I repeat again because I really think it needs repeating, I am in awe of the job that defense counsel did in this case which was evidenced in part in the result the jury [reached] in the acquittals, and in the many, many fine arguments that you put forth. You very ingeniously exploited what seemed to the court nevertheless to be minor inconsistencies in the government's approach and in the positions taken.").) Subjective analysis aside, Petitioner's counsel ultimately obtained acquittals for Petitioner on fifteen of the eighteen charges against him, including more serious charges, such as RICO and extortion, which would have led to a significantly longer sentence than the one Petitioner received.

Moreover, on remand from the Second Circuit, Petitioner's

17

counsel successfully advocated a nearly three-year reduction of the initial ten-year sentence imposed by the District Court. Further, Petitioner's counsel subsequently filed a direct appeal to the Second Circuit, a petition for rehearing en banc to the Second Circuit, a petition for a writ of certiaori before the United States Supreme Court, and the instant Petition for a writ of habeas corpus before this Court.

Based on a review of the entire trial record, and viewing counsel's one purported error – failing to object to a single word in the jury charge – in the "aggregate," Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001), the Court concludes that defense counsel's overall performance did not come close to falling below professionally competent standards such that she was no longer "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; see also Muyet v. United States, No. 03 Civ. 4247 (PKL), 2004 WL 2997866, at *5 (S.D.N.Y. Dec. 27, 2004) ("The reviewing court must assess an attorney's actions in the context of all the surrounding circumstances to determine if those actions were 'reasonable under prevailing professional norms')(quoting Strickland, 466 U.S. at 688, 104 S. Ct. at 2064); Smalls v. McGinnis, No. 04 Civ. 0301 (AJP), 2004 WL 1774578, at *25 (S.D.N.Y. Aug. 10, 2004) ("Even if . . . trial counsel's actions resulted from error rather than strategy, trial counsel's performance must still be accorded a

certain degree of deference, as the Sixth Amendment does not guarantee error-free, perfect representation.")(internal quotations omitted); <u>Harris v. Hollins</u>, No. 95 Civ. 4379 (HB), 1997 WL 633440, at *6 (S.D.N.Y. Oct. 14, 1997) ("Taken in its totality, petitioner's claim must fail because he has not demonstrated that counsel's conduct fell below that of a reasonable attorney, or that the jury would have found him not guilty but for counsel's ineffective performance").

In light of this conclusion, this Court need not continue its analysis of Petitioner's claim. The Court will, however, also explain why Petitioner cannot establish the requisite prejudice.

2.    <u>Petitioner Has Not Been Prejudiced</u>

For numerous reasons, this Court finds that Petitioner cannot establish that he was prejudiced by his counsel's failure to object to the word "might" in the final jury charge. As set forth below, there are only two ways that Petitioner can establish that he was prejudiced: (1) that there is a reasonable likelihood that the District Court would have changed the instruction had his counsel objected, and that Petitioner would have been acquitted on the revised charge; or (2) that, had his counsel preserved the objection and the District Court not modified the charge, there is a reasonable likelihood that the Second Circuit would have found the instruction to contain non-harmless error. There is no likelihood that either scenario would have occurred.

19

a.    Even If The District Court
      Had Changed The Instruction,
      Petitioner Would Have Been Convicted

If trial counsel had objected to the "might" language in the instruction, and the District Court acceded to the objection, there is little to no likelihood that the jury would have acquitted Petitioner on the obstruction of justice charges. Thus, assuming, for example, that the charge had been modified to require that the jury find that Petitioner had the specific intent to obstruct justice, knowing that the natural and probable effect of his intended actions would be the obstruction of justice, there is every reason to believe that he still would have been convicted. Indeed, in rejecting Petitioner's argument that the obstruction of justice charges were not supported by sufficient evidence, the Second Circuit stated:

> This evidence clearly supports the charge that Giovanelli's endeavor – namely, that of passing along that information [about the grand jury investigation] to the targets of the investigation – had the 'natural and probable effect of interfering with the due administration of justice.' Further, the fact that Giovanelli was a high-ranking member of the Genovese crime family, and the fact that he passed the information, inter alia, to the Acting Boss of the Decalvacante Family, supports the view that Giovanelli knew that 'his actions were likely to affect the judicial proceeding.'

Giovanelli, 464 F.3d 346, 350-51 (citing Aguilar, 515 U.S. at 599.)

The evidence against Petitioner was strong enough that it is extremely likely that he would have been convicted even if the

charge contained language considerably stronger than the "might" language used by the District Court. Consequently, even if Petitioner had objected to the "might" language, and convinced the District Court to replace it with "natural and probable" or even "likely," the result for Petitioner would almost certainly not have changed. As a result, Petitioner cannot show that he was prejudiced by his counsel's failure to object.

The far more likely scenario, however, is that if Petitioner's counsel had objected to the "might" language in the charge, the District Court would have overruled that objection. It is clear that the District Court carefully considered the particular instruction it ultimately gave to the jury, and would have been disinclined to modify it further. Petitioner acknowledges this fact. (See Pet.'s Reply, at 5-6 ("No further objection by defendant was necessary, or, indeed permitted. Judge Rakoff was well aware of defendant's position when he made his legal conclusions, and having accepted the principles he accepted, had specifically closed off further objections to the final charge.".)

Consequently, Petitioner's only viable argument – which he only vaguely alludes to it at various points in his papers – is that there is a reasonable likelihood that the Second Circuit would have found the instruction to contain reversible error if his counsel had objected to the "might" language and preserved the issue for appeal. For the reasons set forth below, this Court

finds that argument to be  unpersuasive.

b.    The Second Circuit Would Not Have
Found The Instruction To Be Erroneous

The Second Circuit "review[s] jury charges de novo, reversing only where a charge either failed to inform the jury adequately of the law or misled the jury about the correct legal rule." United States v. Ford, 435 F.3d 204, 210-11 (2d Cir. 2006)(internal citations omitted); see also United States v. Brutus, __ F.3d __, No. 06-2710-cr, 2007 WL 2828690 at *4 (2d Cir. Oct. 2, 2007) ("We generally review challenged jury instructions de novo, reversing only if the charge, taken as a whole, was prejudicial."). Significantly, in reviewing the charge for error, the Second Circuit "is bound by the principle that it must be viewed in its entirety and not on the basis of excerpts taken out of context, which might separately be open to serious question." United States v. Clark, 765 F.2d 297, 303 (2d Cir. 1985).  It is only when a defendant has established that the charge is erroneous that an appellate court will conduct a "harmless error" review. Smith v. Texas, __ U.S. __, 127 S. Ct. 1686, 1698 (2007).  The error would be harmless if there is no "reasonable possibility that the [error] complained of might have contributed to the conviction." Brutus, 2007 WL 2828690 at *7 (quoting Fahy v. Connecticut, 375 U.S. 85, 86-87, 84 S. Ct. 229 (1963).)

Thus, in order to establish the requisite prejudice under the second prong of Strickland, Petitioner must show that had his

counsel objected to the charge and preserved the issue, there is a reasonable likelihood that the Second Circuit would have (1) found the charge to be erroneous, and (2) found that the error was not harmless.  The record precludes such findings.  First, the Second Circuit has already rejected Petitioner's argument that the inclusion of the word "might" in the instruction impermissibly undermined the "nexus" requirement of <u>Aguilar</u> – that "the act must have a relationship in time, causation, or logic, with the judicial proceedings."  515 U.S. at 599.  The Second Circuit found Petitioner's attempts to analogize the circumstance of his case to the "nexus" requirement in <u>Aguilar</u> "unconvincing."  464 F.3d at 350.

In <u>Aguilar</u>, the defendant lied to investigators who were not necessarily involved with, or connected to, the grand jury proceeding.  515 U.S. at 600.  The fact that the agents had no known connection to the grand jury investigation was central to the holding that defendant's actions were insufficient to constitute a violation of § 1503.  <u>Id.</u> at 600.  However, the Court specifically held that if the defendant possessed the requisite intent and lied to a subpoenaed witness – irrespective of whether that witness actually testifies or transmits the defendant's version of the story – the defendant could be found guilty under § 1503 because he: (a) possessed the requisite intent; and (b) acted in a manner that was "likely to obstruct justice."  <u>Id.</u> at 602-03.

23

This case presents a dramatically different situation than Aguilar. Here, Petitioner provided detailed grand jury information, that he knew had been unlawfully obtained from the grand jury, directly to the targets of that particular grand jury investigation. Consequently, Petitioner's acts could not have been more related "in time, causation, or logic, with the judicial proceedings." Aguilar, 515 U.S. at 599.[7]

In all events, however, the analysis in Aguilar squarely defeats Petitioner's argument that the charge in this matter was erroneous. The charge here specifically instructed the jury that they needed to find, beyond a reasonable doubt, that (1) there was a grand jury in the Southern District of New York conducting an investigation into organized crime, (2) Petitioner knew that the grand jury was conducting such an investigation and preparing to issue charges, and (3) Petitioner knowingly and corruptly endeavored to obstruct or impede the grand jury proceedings by actions he took in two specific meetings he had with the targets

---

[7] Petitioner seems to fundamentally misunderstand the "nexus" requirement, which only requires that the *intent* be acted out in a *manner* that has the natural and probable effect of obstructing justice. In other words, the focus is on whether there is a sufficient connection between the intent of the alleged behavior and the potential that it could affect a specific judicial proceeding. See Aguilar, 515 U. S. at 602 ("Were a defendant with the requisite intent to lie to a subpoenaed witness who is ultimately not called to testify, or who testifies but does not transmit the defendant's version of the story, the defendant has endeavored to obstruct, but has not actually obstructed, justice. Under our approach, a jury could find such defendant guilty.").

of the investigations. (See Final Instructions, at 16.) The instruction then went on to state that "corruptly endeavored" meant to "undertake some activity with the specific motive or purpose of obstructing or impeding the grand jury's proceedings in some respect." (Id.) Thus, the instruction clearly satisfied the "manner" element – meeting with the targets of the investigation to provide them with information regarding the investigation – and the "intent" element – with the motive of obstructing or impeding the grand jury proceedings – required by Aguilar. Taken as a whole, there is no likelihood that the Second Circuit would have found this charge to be erroneous based on the incidental inclusion of the word "might" in the portion of the instruction setting forth the government's contentions.

Finally, even assuming *arguendo* that the word "might" should not have been used, Petitioner cannot establish, as he is required to do, that there is a reasonable likelihood that the Second Circuit would have found the use of that word to be non-harmless error. There is nothing in the record to even suggest that the use of the word contributed in any way to Petitioner's conviction. To the contrary, the record indicates that Petitioner would have been convicted under the "natural and probable effect" language that he presumably desired.[8]  Both the District Court and the Second

---

[8] In a curious omission, Petitioner never specifically states what exact language he believes a properly-worded instruction would have contained.

Circuit found that the evidence adduced at trial satisfied the standard set forth in Aguilar, irrespective of the changes that were made to the jury charge.  At the re-sentencing hearing, the District Court stated:

> You are stuck with the fact that the government in the court's view presented very substantial evidence that [Petitioner] intentionally obstructed justice and was intending to do so in connection with what he knew was a murder investigation, . . . the government has convinced me again, as they did before, that what they claim the defendant did and intended is precisely what he did and intended.  [O]n the basic facts I think the government has it exactly right, and I think that, frankly, as I have now gone back and reviewed it . . . voluminous though it may be, I was more and more persuaded of the government's factual position . . . I do make the findings beyond a reasonable doubt.

(See Transcript dated Aug. 29, 2005, at 7-8.)  The Second Circuit echoed these sentiments upon its review of the record: "This evidence clearly supports the charge that Giovanelli's endeavor - namely, that of passing along that information to the targets of the investigation - had the natural and probable effect of interfering with the due administration of justice."  464 F.3d at 351-52.

In short, even assuming that it was an error for Petitioner's counsel to fail to object to the word "might" in the final charge, such an error does not undermine confidence in the outcome of Petitioner's trial because there was extremely strong evidence to convict Petitioner on stronger language.  See Loliscio v. Goord,

26

263 F.3d 178, 194-96 (2d Cir. 2001) (even where counsel's performance was objectively unreasonable, petitioner was not prejudiced and, therefore, was not denied effective assistance of counsel); <u>Lindstadt</u>, 239 F.3d at 204 ("Even serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt."); <u>United States v. Simmons</u>, 923 F.2d 934, 956 (2d Cir. 1991)("[G]iven the plethora of evidence against [petitioner], there is little reason to believe that alternative counsel would have fared any better.").

Consequently, Petitioner cannot show that he was prejudiced because he cannot show that there is a reasonable likelihood that the Second Circuit would have found the instruction to be erroneous or, assuming that it did find error, that the error was non-harmless.

*    *    *

For all of the foregoing reasons, this Court recommends that his Petition be denied with prejudice.

II.  <u>Request For The Appointment Of Counsel</u>

Petitioner also requests that this Court appoint him counsel for this Petition pursuant to the Criminal Justice Act.  In its entirety, his counsel's request states:

> Finally, I ask the Court to appoint me pursuant to the Criminal Justice Act to represent Mr. Giovanelli on this 2255 application.  As the Court knows, I am fully familiar with the case, and Mr. Giovanelli should have counsel on this application, which

27

I believe has merit.

(Petition, at 5.)

Respondent contends that, under 18 U. S. C. § 3006A, the appointment of counsel to assist in the presentation of a motion for a new trial after the appellate process has run its course is discretionary and that the principal determination is whether the Petitioner's argument is meritorious. (Resp't Mem., at 11.) Respondent goes on to state that because the Petition is not meritorious, and because Petitioner's counsel is (perhaps disingenuously from Respondent's perspective) arguing her own ineffectiveness, appointment of counsel is not warranted. (Id.)

A.    Legal Standard

Unlike criminal defendants, prisoners and indigents filing civil actions have no constitutional right to counsel. See Gardner v. New York, No. 04 Civ. 4675 (LTS) (DF), 2005 WL 696953, at *1 (S.D.N.Y. Mar. 24, 2005); Mackey v. DiCaprio, 312 F. Supp. 2d 580, 581 (S.D.N.Y. 2004). Under 28 U.S.C. § 1915(e), a court may request an attorney to represent a person unable to afford counsel. The Second Circuit has offered guidance to courts in exercising this discretion: "In deciding whether to appoint counsel, however, the district judge should first determine whether the indigent's position seems likely to be of substance." Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997) (quoting Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1986), aff'd after remand, 935 F.2d

1277 (2d Cir.), <u>cert. denied</u>, 502 U.S. 986, 112 S. Ct. 596 (1991)).
To make this threshold showing, it is not necessary for a plaintiff
to demonstrate that his or her claims will survive a dispositive
motion, but rather, "the Court must find that the claims satisfy a
'threshold showing of merit.'" <u>Gardner</u>, 2005 WL 696953, at *2
(citing <u>Hendricks</u>, 802 F.3d at 393-394).

Once a plaintiff satisfies the threshold merit requirement, a
court should then consider (1) the indigent's ability to
investigate crucial facts, (2) whether conflicting evidence
implicating the need for cross-examination will be the major proof
presented to the fact finder, (3) the indigent's ability to present
the case, (4) the complexity of the legal issues, and (5) any
special reason why appointment of counsel would be more likely to
lead to a just determination. <u>See</u> <u>Hendricks</u>, 114 F.3d at 392
(quoting <u>Hodge</u>, 802 F.2d at 61-62).

B.   <u>Application</u>

As set forth in detail above, the Court does not believe that
Petitioner's claims are meritorious. Thus, Petitioner has failed
to clear the initial hurdle to establish that he is entitled to the
appointment of counsel. However, even considering Petitioner's
Application under the <u>Hodge</u> factors, the Court denies Plaintiff's
request for appointment of counsel.

Here, there is no need for Petitioner to investigate facts
relevant to his claims because his Petition is based exclusively on

a legal argument. Thus, the first factor weighs against Petitioner. There is also no need to present additional evidence, so the second factor also weighs against Petitioner. The Court recognizes that the technical argument raised in the Petition is complicated and that Petitioner might not have been able to present the issue as well as Ms. Shevitz did; however, the subtlety of the argument is reflective of its lack of merit. The Court perceives no other compelling reason to appoint counsel in this matter — and Petitioner has offered none.[9]

Thus, having already determined that the Petition does not have merit, and having considered the relevant <u>Hodge</u> factors, the Court finds that appointment of counsel is not warranted.

### CONCLUSION

For the reasons set forth above, the Court recommends that the Petition for a writ of habeas corpus be denied, and that this action be dismissed with prejudice.

As Petitioner has not made a substantial showing of a denial of a federal right, this Court recommends that no certificate of appealability be issued. <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 112 (2d Cir. 2000). This Court further recommends certification, pursuant to 28 U.S.C.

---

[9] Although not a specific factor to be addressed, the Court also notes that Petitioner's counsel does not appear to have spent a substantial amount of time on the Petition, which consists of a five-page, double-spaced affidavit from Ms. Shevitz.

§ 1915(a)(3), that any appeal from the Court's order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 445-46, 82 S. Ct. 917, 921 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6(a) and (e).  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, United States District Judge, and to the chambers of the undersigned, Room 1660.  Any requests for an extension of time for filing objections must be directed to Judge Rakoff.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 812, 115 S. Ct. 86 (1994); Frank v. Johnson, 968 F. 2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

31

Dated: November 27, 2007
       New York, New York


Copy mailed this date to:

Frederico Giovanelli
15836-054
FCI Fort Dix
Federal Correctional Institution
P.O. Box 2000
Fort Dix, NJ 08640

Vivian Shevitz
46 Truesdale Lake Drive
South Salem, NY 10590

Jason P.W. Halperin
Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007

32